UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAUNYA BYLER, | ) | CASE NO. 5:20-cv-1822 |
| Plaintiff, | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, Acting Comm'r of Soc. Sec., | ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |

Plaintiff, Taunya Byler ("Plaintiff"), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"),[1] denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

Plaintiff applied for DIB and SSI on March 29, 2017, alleging a disability onset date of October 1, 2014. (R. 11, Transcript ("Tr.") 242-249). The applications were denied initially and

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 153-171). Plaintiff participated in the hearing on May 9, 2019, was represented by counsel, and testified. (Tr. 35-86). A vocational expert ("VE") also participated and testified. *Id*. On July 19, 2019, the ALJ found Plaintiff not disabled. (Tr. 29). On June 16, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). The Complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14 & 16).

Plaintiff asserts the following assignment of error: the residual functional capacity finding (RFC) is not supported by substantial evidence. (R. 14, PageID# 1000-1008).

## II. Evidence

**A. Relevant Medical Evidence**[2]

### 1. Treatment Records

On July 7, 2014, Plaintiff went to the emergency room ("ER") reporting left-side numbness (Tr. 701), and physical examination was largely normal. (Tr. 695-696). A CT scan showed no evidence of acute hemorrhage or infarct. (Tr. 697). The impression was "acute to subacute ischemia in the right thalamus;" "nonspecific periventricular, subcortical and pontine white matter change as well as multiple small foci of remote ischemic change;" and "motion limited however grossly unremarkable MRA of intracranial circulation." (Tr. 698). Mark B. Rorick, M.D.'s impression was lacunar stroke in the right thalamus with sensory loss on the left side of the body. (Tr. 716).

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the Plaintiff in her brief and any other portions of the record deemed relevant by the court to the assignment of error raised.

On September 9, 2014, Plaintiff returned to the ER with complaints of residual tingling and interval paresthesia of the left side of the body. (Tr. 670). Physical and neurological examination were largely normal except for abnormal sensory exam. (Tr. 673-675). A CT scan was consistent with "further evolution of previously identified right thalamic infarct on July 7, 2014, and new hypodensity in the right thalamus measuring 5 mm compared to July 7, 2014." (Tr. 677). Discharge papers stated as follows:

> [T]his young lady had a thalamic infarct approximately 2 months ago and at that time multiple investigations were undertaken looking for etiology. At that point she also had marked blood pressure elevation. And she was instructed not to smoke as well as to take her blood pressure medications. However in the intervening 2 months she continues to smoke did not take any of her medications and so developed recurrent neurologic symptoms and therefore presented to the emergency department and was found to have a recurrent stroke in the frontal area. Neurologic consultation was requested who reaffirmed our recommendations. She became neurologically stable and in improved condition within a short period of time. We reinforced the fact that she was very likely [sic] twice now but that she ought to change her lifestyle substantially. She has also had a history of recreational drug use. Also recommended to be a poor choice.

(Tr. 679).

On December 11, 2014, Plaintiff presented to Aamir Hussain, M.D., for a follow-up for left arm and left leg weakness. (Tr. 739-743). Dr. Hussain explained that left hemibody numbness was likely related to a right thalamic stroke. (Tr. 739). On physical examination, she had abnormal motor and sensory exams, but normal muscle tone and strength throughout. (Tr. 741). She had an abnormal antalgic gait. *Id*. Dr. Hussain observed that Plaintiff's was a "complex case" with a "[history] of uncontrolled [blood pressure] and right thalamic ischemic lesions when initially seen in GMC in July of 2014;" present "worsening of the left arm and leg pain and she has Right thalamic stroke that can be associated with that. Dejerine Rousy Syndrome;"[3] and

---

[3] "Central post-stroke pain, also known as Dejerine Roussy syndrome or thalamic pain

3

"new white matter lesion in the brain MRI" of September 2014. (Tr. 743).

On April 9, 2015, Plaintiff was seen by Alessandro Serra, M.D., reporting pain in her left side, mild weakness of the left arm, occasionally dropping objects with her left hand, and mild difficulty of gait due to left leg weakness. (Tr. 356-362). The principal neurologic diagnosis was "MS [multiple sclerosis ("MS")], Strokes." *Id*. at 356. On physical examination, sensation to light touch and pinprick was subjectively decreased by 50%, largely normal muscle strength and reflexes, standard gait was normal and she had mild difficulty with tandem gait. (Tr. 360-361).

On May 1, 2015, Plaintiff was seen by Dr. Hussain for MS follow-up. (Tr. 732). He noted Plaintiff was "doing well" on Aubagio with no side effects, and was "asked not to go for tanning too much because MS can flare." *Id*. She reported pain in the left leg. (Tr. 733). On physical exam, she had no swelling or varicosities, normal motor exam, normal muscle bulk and tone in all extremities, 5/5 muscle strength throughout, decreased sensation of pinprick and temperature on the left, and an antalgic gait. (Tr. 734).

On June 9, 2015, Plaintiff complained of left knee pain and chronic left lateral thigh muscle tension. (Tr. 726). For Gait, she had "Abnormal left leg circumduction, residual from an old [multiple sclerosis] attack." (Tr. 728).

On January 4, 2016, Plaintiff complained of more numbness on her left side. (Tr. 721). She had stopped taking her medication, and did not call insurance or the doctor's office to obtain more. *Id.* On physical examination, Plaintiff had normal sensory exam to light touch but decreased pin and temperature on the left, and an abnormal gait. (Tr. 724).

---

syndrome, is a rare central neuropathic pain syndrome [that] occurs after infarction of the ventroposterolateral thalamus." https://www.ncbi.nlm.nih.gov/books/NBK519047/ July 5, 2021 (last accessed Jan. 20, 2022).

4

On April 7, 2016, Plaintiff presented for multiple sclerosis management and a consultative examination with Dr. Serra. (Tr. 350-355). She had decreased sensation of the left lower and upper extremity as well as the left lower face and an abnormal gait. (Tr. 354). He referred Plaintiff to physical therapy for gait issues. (Tr. 355).

On September 21, 2017, Plaintiff saw neurologist Robert J. Brocker, M.D., for relapsing MS. (Tr. 428). Plaintiff reported fatigue, nausea, joint pain, joint stiffness, muscle weakness, back pain, neck pain, frequent headaches, and depression. (Tr. 430). On neurological examination, Plaintiff had left hemihypesthesia, slight circumduction of the left leg with ambulation, and sluggish capillary circulation. (Tr. 432). Motor examination was "5/5 strength of arms and legs without evidence of pronator drift and normal tone present in all muscles. There is no evidence of abnormal movement or muscle atrophy." *Id*. Sensory exam was "intact to position, vibration, temperature, graphesthesia and pin prick." *Id*. Plaintiff had a "normal narrow-based gait with normal arm swing and no evidence of circumduction of the legs on ambulation." *Id*.

On October 2, 2017, Plaintiff was seen by nurse Woodson for an MS follow-up, and she was tolerating Aubagio well. (Tr. 856). She continued to report pain and burning sensation in her left lower extremity, a few falls, and worsening fatigue. (Tr. 857). On physical exam, she had normal motor strength, an abnormal gait with noted left foot inversion, and diminished sensation in the left leg. (Tr. 859). On the "Twenty-Five Foot Walk Test," Plaintiff's time was 6.8 seconds. (Tr. 859).

On April 12, 2018, Plaintiff was again seen by nurse Woodson for an MS follow-up, and she was tolerating Aubagio well. (Tr. 851). She continued to report pain and burning sensation in her left lower extremity, her left knee giving out, increased fatigue, muscle spasms, and

numbness in her right arm. (Tr. 852). The last MRI of her brain and cervical spine was on May 23, 2017, and was stable. *Id*.

On September 13, 2018, Plaintiff began a course of physical therapy; twelve sessions of therapy were recommended over 4-6 weeks to improve function. (Tr. 498-500).

On December 6, 2018, Plaintiff chose to discontinue physical therapy after six visits. (Tr. 520-521). On the same date, she was seen by Sophia Woodson, CNP, for an MS follow-up. (Tr. 822). She reported left-sided pain and a burning sensation on her left side, including her left foot. (Tr. 823). She had 5/5 motor strength and normal cranial nerves, but decreased sensation on the left and an abnormal gait with noted left foot inversion. (Tr. 825).

On December 31, 2018, Plaintiff received ketamine infusions for pain. (Tr. 755-756).

On February 15, 2019, Plaintiff complained of left side body pain to Salim Hayek, M.D. (Tr. 758-761). On physical exam, Plaintiff's musculoskeletal examination (including gait), motor strength, and reflexes were all normal. (Tr. 761). Plaintiff reported decreased sensation in left upper and lower extremity to pinprick and temperature sensation. *Id*.

On April 5, 2019, Plaintiff was seen by Jennifer Sweet, M.D., for an initial neurosurgical evaluation, specifically a pain pump consultation referred by Dr. Hayek. (Tr. 783). Dr. Sweet noted that Plaintiff "has had pain psych eval with Dr. Janata on 3/20/19 and he felt patient is an acceptable candidate for ITP pump." (Tr. 782). On physical examination, Plaintiff weighed 210 pounds, had normal range of motion, largely normal neurological examination of the cranial nerves, no atrophy, and 5/5 in both upper and lower extremities "without flacidity, rigidity, cogwheeling, or spasticity. No visible fasiculations." (Tr. 786). Plaintiff had an abnormal gait due to left-sided numbness, dysmetria with coordination, and decreased sensation on the left. (Tr. 787). It was her opinion that "deep brain stimulation surgery would be the best chance of

covering all areas of [Plaintiff's] pain." (Tr. 787).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

At the request of the State Agency, Plaintiff underwent a consultative examination with Stephanie A. Kopey, D.O. on January 23, 2015. (Tr. 329-333). Dr. Kopey concluded that Plaintiff "could hear, speak, remember, understand, concentrate, interact, and adapt without limitation. [She] can lift/carry up to 15 pounds at the waist level. [She] can handle objects without limitation. There is no limit on sitting and standing. [She] can walk independently community distances without assistive device on level surfaces. The claimant is a falls risk and should avoid unprotected heights." (Tr. 332).

On May 20, 2017, Plaintiff saw Freeland Ackley, D.O. who performed a disability consultative examination, at the request of the State Agency. (Tr. 336-341). Plaintiff reported that she could sit for 30 minutes, stand for 5 minutes, walk "not far," and lift only 8 pounds. (Tr. 337). Dr. Ackley's physical and neurological examinations yielded largely normal results, including a normal reciprocal gait pattern. (Tr. 337-39). With respect to nerves, Dr. Ackley stated that "[s]ensory examination was abnormal to light touch and pinch on the left subjectively to the pt. Throughout the exam the pt was able to use the left side with no difficulty including opening, moving and manipulating which did not seem to align with a global numbness on the left." (Tr. 339). Dr. Ackley opined that Plaintiff "is able to walk for over an hour, sit for more than an hour at a time, stand for over an hour, and lift 20 pounds. The patient does not have any substantial physical limitations with her subjective left sided numbness that would affect her walking, standing or sitting. Her medical conditions seem well controlled on current medications and there are no acute symptoms that would suggest otherwise." (Tr. 340).

On June 5, 2017, State Agency physician Mehr Siddiqui, M.D., completed a residual

functional capacity ("RFC") assessment. (Tr. 96-97). Dr. Siddiqui concluded that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for six hours and sit for six hours each in an eight-hour workday due to limitations caused by a history of stroke and s sclerosis, as well decreased sensation to the left side, but normal strength, ROM, gait and balance. (Tr. 96). He assessed postural limitations including never climbing ladders/ropes/scaffolds; frequently climbing ramps/stairs and crawl; unlimited balancing, stooping, and kneeling. (Tr. 96-97). He assessed no manipulative, visual, or communicative limitations. (Tr. 97). As far as environmental limitations, Dr. Siddiqui proscribed all exposure to hazards due to decreased sensation on the left. *Id*.

On October 7, 2017, Plaintiff saw Dr. Ackley for a second consultative examination. (Tr. 435-440). Plaintiff reported being "completely numb on the left and feels that she can't do anything with that side." (Tr. 435). Again, Dr. Ackley's physical and neurological examinations yielded largely normal results, including a normal reciprocal gait pattern. (Tr. 437-438). Sensory exam was normal, except that Plaintiff had "subjective hyper-sensitivity on the entire left side of her body that was not appreciated today on exam." (Tr. 438). Dr. Ackley found that:

> There is no evidence of muscular asymmetry nor atrophy and no acute joint findings. Strength and range of motion are within normal limits bilaterally. She is able to sit, stand, and walk. She was able to rise from the exam table multiple times without problems or assistance. Speech, hearing, vision, sensation and reflexes are grossly intact. Fine motor coordination and handling is normal.

(Tr. 439). Dr. Ackley again concluded that Plaintiff "is able to walk for over an hour, sit for more than an hour at a time, stand for over an hour, and lift 20 pounds. The patient does not have any substantial physical limitations with her subjective left sided numbness that would affect her walking, standing or sitting. Her medical conditions seem well controlled on current medications and there are no acute symptoms that would suggest otherwise." (Tr. 439).

On October 10, 2017, State Agency physician Anton Freihofner, M.D., completed an RFC assessment. (Tr. 126-128). Dr. Freihofner's opinion mirrored that of Dr. Siddiqui, except that he assessed a prohibition against concentrated exposure to extreme heat. *Id*. Dr. Freihofner noted that Plaintiff reported worsening conditions such as an inability to hold items in her left hand without dropping, no sensation in her left foot, trouble sitting, and an inability to button a shirt. (Tr. 128). Dr. Freihofner explained that:

> Claimant's worsening is not corroborated by the objective evidence in file. Exam on 10/ 02/2017 shows sensation to be normal to light touch throughout. The 09/21/2017 appreciates left hemihypesthesia, slight circumduction of the L leg with ambulation. Strength of BUE/BLE nml. Able to squat and rise from position with ease. Able to rise from sitting position without assistance and had no difficulty getting up and down from the exam table. Able to walk on heels and toes. Tandem walking was normal. Could dress and undress adequately well and was cooperative during exam. Noted to be able to use hands for fine manipulation.

(Tr. 128).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity"

at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since October 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: multiple sclerosis, chronic pancreatitis, cerebral vascular accident (right thalamic stroke 2014), Dejerine-Roussy syndrome, obesity, and peripheral neuropathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments

|     | |
| --- | --- |
|     | that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 5.  | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except is able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, is able to stand and walk 6 hours of an 8-hour workday, is able to sit for 6 hours of an 8-hour workday, unlimited push and pull other than shown for lift and/or carry; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; avoid all exposure to hazards – hazardous machinery and unprotected heights and commercial driving; avoid concentrated exposure to extreme heat; frequent handling and fingering with the left upper extremity. |
| 6.  | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| 7.  | The claimant was born on *** 1975 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9.  | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(Tr. 18, 20, 27-28).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Supportability of the Residual Functional Capacity ("RFC") Determination

Plaintiff's first assignment of error asserts that the ALJ erred by failing to base the RFC evaluation on all of the relevant evidence of record, and asserts the ALJ ignored or mischaracterized evidence that supported restrictions inconsistent with light work. (R. 14, PageID# 1001-1006). The Commissioner argues that substantial evidence supports the ALJ's

RFC finding. (R. 16, PageID# 1034-1041).

Plaintiff devotes much of her argument to identifying portions of the record that she asserts, in a lay opinion, would have supported a more restrictive RFC[4] than found by the ALJ. (R. 14, PageID# 1003-1006). It is not this court's role, however, to reweigh the evidence *de novo* and arrive at its own RFC determination. The court can only review whether the ALJ's decision was supported by substantial evidence.

The Sixth Circuit recently addressed this issue, explaining in pertinent part:

> [The plaintiff] additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).[5] Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). Moreover, "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r*

---

[4] The RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

[5] *Biestek* was also quoted with approval by the Sixth Circuit in *Beaty v. Comm'r of Soc. Sec.*, 2020 WL 6821061, at *2 (6th Cir. Sep. 17, 2020) ("[A]n ALJ's factual findings ... 'shall be conclusive' if supported by 'substantial evidence.' " … "[T]he threshold for such evidentiary sufficiency is not high. ... It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ") (internal citations omitted).

13

*of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

In this case, the ALJ's determination that Plaintiff could perform a limited range of light exertional work is supported by the opinions of State Agency physicians Dr. Siddiqui and Dr. Freihofner. (Tr. 96-97, 126-28). Both assessed an exertional level of light, with some additional postural limitations. *Id*. The ALJ ascribed these opinions "great weight," but assessed some additional postural limitations more restrictive than those assessed by the State Agency physicians. (Tr. 26).

The RFC is also supported by the opinions of consultative examiner, Dr. Ackley, whose opinions the ALJ assigned "great weight." (Tr. 26-27). The ALJ specifically referenced Dr. Ackley's opinion that Plaintiff "does not have any substantial physical limitations with her subjective left sided numbness that would affect her walking, standing or sitting." (Tr. 27, *citing* 340, 439; Exhs. 2F & 7F).

There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians

cannot constitute substantial evidence is inconsistent with the regulatory framework."); *see also Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Therefore, an RFC determination that is based upon the medical opinions of State Agency consultants, and two additional consultative examinations, is generally supported by substantial evidence. The court, consequently, concludes that the ALJ's RFC determination was supported by substantial evidence, as it was supported by the two State Agency opinions and two separate consultative examinations with opinions, albeit from the same examiner.

Plaintiff's argument that the ALJ only cited portions of the opinion that supported the RFC finding while ignoring evidence inconsistent with the RFC is tantamount to the oft-raised but rarely successful accusation of an ALJ cherry-picking the evidence. (R. 14, PageID# 1003-1006). The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by an ALJ "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017). To the contrary, it is the ALJ's responsibility to resolve conflicts in the record where there are conflicting opinions resulting from essentially the same

medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony, to assess the RFC). Simply put, "It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Plaintiff contends that the ALJ ignored significant portions of the record concerning Plaintiff's subjectively abnormal sensory exams, antalgic gait, "slight circumduction of the left leg," "sluggish capillary circulation," the results of her 25 feet walk test, and continued treatment for pain with nerve blocks, ketamine injections, and a surgically implanted pain pump. (R. 14, PageID# 1003-1006). The Sixth Circuit Court of Appeals has explained that:

> [An] ALJ [is] not required to explain every piece of evidence in the record [or] address each check mark from the Physician's Reports. An "ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (explaining that "[a]lthough the ALJ's decision in this case may not be a model of clarity and detail, . . . the ALJ's treatment of the evidence in this case is more than amply supported by the record as a whole"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

*Bayes v. Comm'r of Soc. Sec.*, 757 Fed. App'x 436, 445-46 (6th Cir. 2018); *see also Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 254 (6th Cir. 2016) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision.") (*citing*

*Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004)).

Although Plaintiff understandably disagrees with the ALJ's decision, the law does not require the ALJ to discuss every piece of evidence that is supportive or inconsistent with the RFC. And in this case, with a nearly one-thousand page record, the ALJ cannot be expected to discuss every piece of evidence that Plaintiff believes is inconsistent with the RFC. Moreover, the ALJ did not ignore the kinds of evidence Plaintiff identified. Rather, the ALJ's decision included MS, Dejerine-Roussy syndrome, right thalamic stroke, obesity, and peripheral neuropathy among Plaintiff's severe impairments. (Tr. 18). In addition, the ALJ discussed the symptoms Plaintiff contends were ignored. First, the ALJ's decision provides multiple references to Plaintiff's allegations of pain in the record (Tr. 22 (twice), 23, 24 (twice), 25), but ultimately concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with both the objective and subjective evidence of record.[6] (Tr. 21). The ALJ, while making frequent note of normal gait or ambulation, also acknowledged records that showed an abnormal or antalgic gait. (Tr. 22 "poor SIM related gait," Tr. 24 "noted that she had an abnormal gait"). Further, the ALJ also noted multiple instances of decreased sensation, numbness, and tingling. (Tr. 22, 23 (twice), 24, 24-25). Certainly, there is no authority that would have required the ALJ to point out every instance of, for example, an antalgic or abnormal

---

[6] Plaintiff's Brief on the Merits has not developed a legal argument alleging any substantive or procedural deficiency regarding the ALJ's credibility analysis. Accordingly, any such argument on the issue is waived. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 U.S. Dist. LEXIS 64805, 2016 WL 2868735 at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

gait in the record. (Tr. 27-28). Simply put, Plaintiff's allegation that the ALJ ignored significant and material portions of the record is not persuasive. Moreover, none of the allegedly neglected pieces of evidence cited by Plaintiff are inherently incompatible with light work. Rather, it is merely Plaintiff's interpretation of the evidence, as Plaintiff relies upon no medical opinions that stand for such a proposition.

To the extent Plaintiff asks the court to override the ALJ's weighing of the State Agency medical opinions that Plaintiff is capable of light work, based on Plaintiff's own lay interpretation of other medical evidence of record, the court declines to do so. Such an argument is tantamount to an invitation for this court to reweigh the evidence, overrule the State Agency opinions based on this court's lay interpretation of the medical evidence, and to find that the RFC for light exertional work—with additional limitations—is unsupported. This court's role in considering a social security disability appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 U.S. Dist. LEXIS 147362, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 146332, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Although the court does not foreclose the possibility that facts in a case and underlying record may so contradict the RFC that a remand would be warranted due to a lack of substantial evidence, the court does not find that the present case presents such circumstances.

Finally, Plaintiff notes that she filed a subsequent application for SSI benefits on June 30, 2020, following the denial of application in instant matter. (R. 14, PageID# 1006). Plaintiff asserts that, on March 31, 2021, almost a year after the Appeals Council denied her application at

issue in the present action, the Social Security Administration approved her subsequent application for SSI. *Id*. As the Commissioner points out, "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Here, Plaintiff suggests that it is the subsequent award itself that constitutes the evidence undermining the prior denial. A similar argument has been rejected by the Sixth Circuit Court of Appeals, which stated:

> Allen argues that his subsequent favorable decision finding him disabled beginning the day after the initial decision denying benefits constitutes new and material evidence justifying remand under § 405(g). The magistrate judge correctly found that a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g). Therefore, Allen did not meet his burden of showing that remand is proper under this section.

*Allen v. Comm'r of Social Sec.*, 561 F.3d 646, 652–53 (6th Cir. 2009); *accord Deloge v. Comm'r of Soc. Sec.*, 540 Fed. App'x 517, 519 (6th Cir. 2013) ("The fact of a subsequent favorable assessment is not itself new and material evidence under § 405(g); only the medical evidence that supported the favorable assessment can establish a claimant's right to a remand."); *Gibson v. Comm'r of Soc. Sec.*, 2014 WL 619135, at *9 (S.D. Ohio Feb. 18, 2014) ("While a favorable decision may signal there is new and material evidence sufficient to warrant a sentence six remand, the decision by itself is insufficient to establish the requisite showing.")

Notably, Plaintiff does *not* argue that there is new and material evidence that justifies a sentence six remand aside from the subsequent award itself. To the contrary, Plaintiff asserts that the subsequent approved application was based on her "lengthy history and continuum of treatment." Thus, Plaintiff essentially argues that the approval of her subsequent application was not based on a worsening of her condition, but rather that her condition was long-standing and should have been approved even earlier. Plaintiff, however, cites no law to support such a

19

contention, which runs contrary to the above cited precedent.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 21, 2022

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).